## UNITED STATES  DISTRICT COURT
### EASTERN DISTRICT OF LOUISIANA

**JESSIE TAYLOR**                                    **CIVIL ACTION**

**versus**                                           **NO. 06-4118**

**SUE HOLLIDAY (WARDEN)**                             **SECTION: "K" (6)**

## REPORT AND RECOMMENDATION

      This matter was referred to this United States Magistrate Judge for the purpose of conducting a hearing, including an evidentiary hearing, if necessary, and submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases in the United States District Courts.  Upon review of the record, the Court has determined that this matter can be disposed of without an evidentiary hearing.  See 28 U.S.C. § 2254(e)(2).[1]  Therefore, for all of the following reasons, **IT IS RECOMMENDED** that the petition be **DISMISSED WITH PREJUDICE**.

---

[1] Pursuant to 28 U.S.C. § 2254(e)(2), whether to hold an evidentiary hearing is now a statutorily mandated determination.  According to Section 2254(e)(2), the district court generally may hold an evidentiary hearing only when the petitioner has shown that either the claim relies on a new, retroactive rule of constitutional law that was previously unavailable (28 U.S.C. § 2254(e)(2)(A)(i)) or the claim relies on a factual basis that could not have been previously discovered through the exercise of due diligence (28 U.S.C. § 2254(e)(2)(A)(ii)); and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner (28 U.S.C. § 2254(e)(2)(B)).

Petitioner, Jessie Taylor, is a state prisoner incarcerated at the Elayn Hunt Correctional Center, St. Gabriel, Louisiana. On February 22, 2000, he was convicted of distribution of crack cocaine.[2] On October 20, 2000, he was found to be a third offender,[3] and, on March 15, 2001, he was sentenced as such to a term of fifteen years imprisonment without benefit of probation, parole, or suspension of sentence.[4] On September 26, 2001, the Louisiana Fourth Circuit Court of Appeal affirmed petitioner's conviction, amended his sentence to reflect that only the first five years of the sentence would be served without benefit of parole, and affirmed the sentence as amended.[5]

On or about December 13, 2001, petitioner filed with the state district court an application for post-conviction relief.[6] That application was granted on September 8, 2003.[7] The state sought writs, and, on January 12, 2004, the Louisiana Fourth Circuit Court of Appeal granted

---

[2] State Rec., Vol. I of II, transcript of February 22, 2000, p. 107; State Rec., Vol. I of II, minute entry dated February 22, 2000; State Rec., Vol. I of II, jury verdict form.

[3] State Rec., Vol. I of II, transcript of October 20, 2000; State Rec., Vol. I of II, minute entry dated October 20, 2000.

[4] State Rec., Vol. I of II, transcript of March 15, 2001; State Rec., Vol. I of II, minute entry dated March 15, 2001.

[5] State v. Taylor, No. 2001-K-1284 (La. App. 4th Cir. Sept. 26, 2001) (unpublished); State Rec., Vol. I of II.

[6] State Rec., Vol. II of III.

[7] State Rec., Vol. II of II, minute entry dated September 8, 2003.

that writ application and reversed the trial court's decision.[8]  Petitioner then filed with the Louisiana Supreme Court a writ application which was denied on December 9, 2005.[9]

On July 22, 2006, petitioner filed this federal application for *habeas corpus* relief claiming that he received ineffective assistance of counsel at trial.  The state concedes that the application is timely[10] and does not argue that petitioner failed to exhaust his state court remedies.

<u>Standard of Review</u>

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") comprehensively overhauled federal *habeas corpus* legislation, including 28 U.S.C. § 2254. Amended subsections 2254(d)(1) and (2) contain revised standards of review for questions of fact, questions of law, and mixed questions of law and fact.  Provided that the state court adjudicated the claim on the merits, pure questions of law and mixed questions of law and fact are reviewed under § 2254(d)(1) and questions of fact are reviewed under § 2254(d)(2).  <u>Hill v. Johnson</u>, 210 F.3d 481, 485 (5th Cir. 2000).

As to questions of law and mixed questions of law and fact, a federal court must defer to the state court's decision unless it "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1).   The United States Supreme Court has noted:

---

[8] <u>State v. Taylor</u>, No. 2003-K-2042 (La. App. 4th Cir. Jan. 12, 2004) (unpublished); State Rec., Vol. II of II.

[9] <u>State *ex rel.* Taylor v. State</u>, 916 So.2d 1049 (La. 2005) (No. 2005-KH-0247); State Rec., Vol. II of II.

[10] Rec. Doc. 7, p. 3.

§ 2254(d)(1)'s "contrary to" and "unreasonable application" clauses have independent meaning. A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in our cases, or if it decides a case differently than we have done on a set of materially indistinguishable facts. The court may grant relief under the "unreasonable application" clause if the state court correctly identifies the governing legal principle from our decisions but unreasonably applies it to the facts of the particular case. The focus of the latter inquiry is on whether the state court's application of clearly established federal law is objectively unreasonable, and we stressed in Williams[ v. Taylor, 529 U.S. 362 (2000)] that an unreasonable application is different from an incorrect one.

Bell v. Cone, 535 U.S. 685, 694 (2002) (citations omitted).

As to questions of fact, factual findings are presumed to be correct and a federal court will give deference to the state court's decision unless it "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2); see also 28 U.S.C. § 2254(e)(1); Hill, 210 F.3d at 485.

<u>Facts</u>

In denying petitioner's post-conviction claims, the Louisiana Fourth Circuit Court of Appeal summarized the facts of this case as follows:

At trial, Detective Donald Polk testified that at about 7 p.m. on 8 April 1999 he was working as an undercover agent in a buy/bust narcotics operation in the area of Chef Menteur Highway and Wilson Street.[FN] He was wearing a recording device so as to record transactions and was carrying money, which had been photocopied. A videotape of the transaction was played for the jury, and the detective commented on what was occurring as the tape played. He testified that while he was wearing plain clothes and driving an unmarked car he saw Janie Bird on the street and asked her to help him buy cocaine. She got into his car, and after riding to several locations, suggested they go to Bonita and Grant Streets. Once there, she purchased two rocks of cocaine from a man who immediately

walked away.  The detective gave his backup team a description of
what the man was wearing, and when Ms. Bird got back into his car
and handed him the rocks, he said, "Fire, Fire.  It looks like fire,"
which was a prearranged signal to his backup team that the purchase
was complete.  The detective identified Taylor as the man he saw
selling cocaine to Ms. Bird.

> [FN] Under cross-examination Detective Polk said the
> street was Warner, not Wilson.  The facts have been
> taken from this court's appellate opinion.

Detective Nicole Gouch testified at trial that she was working
as a spotter during the undercover operation on 8 April 1999.  She
maintained surveillance of the undercover officer and taped his
conversation.  She also saw Ms. Bird get into the detective's vehicle
and heard him speaking to her.  She followed them to several
locations as they attempted to purchase cocaine.  At Bonita and Grant
Streets, she saw Ms. Bird leave the detective's car and approach
Taylor.  Ms. Bird handed Taylor money, and he gave her something
in return.  Ms. Bird walked back to the detective's car and she then
received the signal that the transaction was complete, so she began to
follow the man who sold the item to Ms. Bird as he went down
Bonita Street.  Detective Gouch also alerted the backup team.  She
saw Taylor enter a house at 4604 Bonita Street, and then she drove
away from the house to the intersection of Grant and Francisco Verret
Streets.  At that corner she saw the man again; he was running.  She
immediately advised the backup team of his position.  (About five
minutes had passed between the time she saw Taylor entering the
house and the time she saw him at the intersection.)  She followed
him in her car and never lost sight of him.  She did not arrest him, but
she witnessed his arrest at a school on Viola Street.

Officer George Jackson testified at trial that he was part of the
takedown unit in the buy/bust operation in which Taylor was
arrested.  He was driving a marked police car and wearing a uniform.
He was four blocks away from the site of the transaction.  He heard
Detective Gouch's description of the vendor running in a westbound
direction on Francisco Verret Street so he drove to that location
where he saw a man fitting the description running through a yard on
Viola Street.  Officer Jackson chased the man into a schoolyard
where a scuffle ensued.  The man hid under a building, but after a
few minutes he emerged and was arrested.  When searched incident

to his arrest, Taylor was carrying $283; however, he did not have the marked $20 bill from Detective Polk.

A stipulation between the parties was entered that the two rocks placed into evidence were tested and proved to be crack cocaine.

Janie Bird, who was thirty-three years old at the time of trial, testified that she quit school after the ninth grade; she also testified that she had been in an auto accident in which she suffered a brain hemorrhage and a paralysis in the right side of her back. She testified that she remembered Detective Polk who asked her "where he could find something for a headache" as she walked on the street. She got into his car, and he drove around while they looked for someone selling crack. He offered her $10 to find him the drug. She found a man who had cocaine and purchased it from him, but that man was not Taylor. As soon as she gave the cocaine to the driver, police cars appeared. The driver told her to get out of the car, and when she did, she was arrested. Bird admitted to having convictions for possession of cocaine, possession of marijuana, and solicitation for a crime against nature.[11]

<u>Ineffective Assistance of Counsel</u>

Petitioner claims that his trial counsel was ineffective. In <u>Strickland v. Washington</u>, 466 U.S. 668 (1984), the United States Supreme Court established a two-prong test for evaluating claims of ineffective assistance of counsel. A petitioner seeking relief must demonstrate that counsel's performance was deficient *and* that the deficient performance prejudiced his defense. <u>See</u> <u>Strickland</u>, 466 U.S. at 697.

To prevail on the deficiency prong, petitioner must demonstrate that counsel's conduct fails to meet the constitutional minimum guaranteed by the Sixth Amendment. <u>See</u> <u>Styron v. Johnson</u>, 262 F.3d 438, 450 (5th Cir. 2001). "Counsel's performance is deficient if it falls below

---

[11] <u>State v. Taylor</u>, No. 2003-K-2042, at pp. 2-4 (La. App. 4th Cir. Jan. 12, 2004) (unpublished); State Rec., Vol. I of II.

an objective standard of reasonableness." <u>Little v. Johnson</u>, 162 F.3d 855, 860 (5th Cir. 1998). Analysis of counsel's performance must take into account the reasonableness of counsel's actions in light of all the circumstances. <u>See</u> <u>Strickland</u>, 466 U.S. at 689. "[I]t is necessary to 'judge ... counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct.'" <u>Lockhart v. Fretwell</u>, 506 U.S. 364, 371 (1993) (quoting <u>Strickland</u>, 466 U.S. at 690). Petitioner must overcome a strong presumption that the conduct of his counsel falls within a wide range of reasonable representation. <u>See</u> <u>Crockett v. McCotter</u>, 796 F.2d 787, 791 (5th Cir. 1986); <u>Mattheson v. King</u>, 751 F.2d 1432, 1441 (5th Cir. 1985).

In order to prove prejudice with respect to trial counsel, petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." <u>Strickland</u>, 466 U.S. at 694. In this context, a reasonable probability is "a probability sufficient to undermine confidence in the outcome." <u>Id</u>. In making a determination as to whether prejudice occurred, courts must review the record to determine "the relative role that the alleged trial errors played in the total context of [the] trial." <u>Crockett</u>, 796 F.2d at 793.

Petitioner bears the burden of proof when asserting an ineffective assistance of counsel claim. Petitioner "must demonstrate, by a preponderance of the evidence, that his counsel was ineffective." <u>Jernigan v. Collins</u>, 980 F.2d 292, 296 (5th Cir. 1993); <u>see also</u> <u>Clark v. Johnson</u>, 227 F.3d 273, 284 (5th Cir. 2000). If a court finds that petitioner has made an insufficient showing as to either of the two prongs of inquiry, i.e. deficient performance or actual prejudice, it may dispose of the claim without addressing the other prong. <u>Strickland</u>, 466 U.S. at 697.

A claim of ineffective assistance of counsel is a mixed question of law and fact. Moore v. Cockrell, 313 F.3d 880, 881 (5th Cir. 2002). Therefore, this Court must defer to the state court determination rejecting such a claim unless petitioner shows that the decision was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States. Id.; see also 28 U.S.C. § 2254(d)(1).

In rejecting petitioner's ineffective assistance of counsel claims, the Louisiana Fourth Circuit Court of Appeal held:

> At the 4 June 2002 evidentiary hearing Sherry Watters ("Watters"), Esquire, testified that she handled Taylor's appeal through the Louisiana Appellate Project. She indicated that she found errors other than the one argued on appeal during her review of the record. However, she noted that trial counsel had not made objections, and thus those issues were not preserved for appeal. She said: "My notes indicate that during closing argument there was a defense objection by the co-defendant, but not by my client's attorney to some reference that the prosecutor made to prior convictions being used to imply that the witness was lying or something like that." Watters stated that the standard was whether the argument was so prejudicial, given the weight of the evidence, that it could have influenced the verdict. Because the assignment of error on appeal related to the insufficiency of the evidence, she felt that the argument would have been viable if an objection had been made. Watters stated that she did not think that the evidence was so overwhelming that the prejudice could have been circumvented.
>
> On cross-examination, Watters testified that the only error that she found after reviewing the entire record that could be raised on appeal was the insufficiency of the evidence based on misidentification. She said that she reviewed the closing arguments, but no appealable issues were present. No objections by the defendant's counsel were made during closing arguments. On redirect, Watters said that she had noted a possible error at the multiple bill hearing relating to the fingerprints and another one during Officer Polk's testimony relating to his conclusion or possible hearsay, where no objection was raised.

The trial judge then asked Watters about an attorney's failure to object to comments during closing argument and the likelihood of success on appeal. She conceded that on appeal one was required to show that the prejudice was so overwhelming that the defendant was denied a fair consideration of the evidence. Watters admitted that usually appellate counsel cannot show that overwhelming prejudice. She stated: "But in a case such as Mr. Taylor's, where insufficiency of evidence was an issue, the prejudice in an insufficiency of the evidence case may have overwhelmed the jury and caused them to find him guilty on less than sufficient evidence." The trial judge then stated that generally the likelihood of reversal for that kind of error is "not very good." Watters stated that was correct and that a flagrant violation was usually required. The trial judge then noted the facts he recalled from the case.

According to the judge, the codefendant brought the police officers to Taylor to buy drugs from him. Watters clarified that the codefendant brought the officers to a group of men standing by a park; then a chase through a house ensued. The officers could not say that they saw the defendant run into the house, but they observed him exit the house.[FN2] Taylor was under a house and subsequently arrested. Watters said: "In other words, there's no direct – this is – this is the person you're going to buy drugs from."[FN3] The judge said that the codefendant never identified Taylor as the one to whom she took the officers to buy drugs. Watters stated that the codefendant testified at trial, but did not identify the defendant.

> [FN2] According to the testimony of the Taylor's trial counsel, Jacques Massey, at a later evidentiary hearing, the officers observed the defendant enter the house, but not exit it.

> [FN3] According to the appellate opinion, two officers identified Taylor as the man who sold cocaine to the codefendant, Ms. Bird.

At the 12 August 2003 hearing, Jacques Massey ("Massey"), the defendant's trial counsel, testified that he had been appointed by the court. He said that the codefendant, Ms. Bird, chose a bench trial while a jury tried his client. Massey recalled that no one was qualified as an expert in the case, but the prosecutor during closing argument referred to Detective Polk as an expert. He admitted that he did not lodge an objection. He explained his reasoning:

> Because I believe that it wasn't any reversal [sic]
> error. Based upon the evidence at trial, we believed
> that the state did not prove its case beyond a
> reasonable doubt. It was a mistaken identity case.
> That issue, referring to expert, was pretty much an
> issue that was thrown out there, as far as argument by
> the district attorney's office. I don't think that that
> would have made a difference in terms of the trial.

Massey conceded that a closing argument is supposed to be limited to argument on the evidence admitted, and no evidence had been produced that the officer was an expert. He conceded that no objection was made, but reiterated that the error was not reversible. There was "overwhelming evidence that was presented that it could have gone either way." Massey did not recall the prosecutor's reference to the codefendant as a liar, but the comments were pointed out to him in the transcripts. He explained: "Basically with the lying aspect, that's just pretty much argument, as far as with other trial counsel. That's just argument sake."

When asked whether he remembered that no witness testified that Taylor was seen running out the back of the house, Massey answered that there had been several individuals at the corner. The officers saw the defendant run into the house, but when they confronted a man in the house, it was not the defendant. The defense theory was that the police had the wrong man. There was no physical evidence and "they had not shown where Mr. Taylor [defendant] ran out the house." Massey stated that it was a case of mistaken identity. He indicated that no police officer testified and the police report did not show that Taylor was seen running out the back of the house. He then said: "But I think we did – I think we may have did [sic] a redirect regarding that. Because I spoke to the jury about no one ran out the back of the house." When asked whether he made a conscious decision not to object when the prosecutor argued that the officers saw Taylor run out of the back of the house, he said: "I don't recall at that time during the direct examination, some of it, in terms of the running out the back of the house." Massey again stated that the defendant was not in the house; the officers found someone else inside the house. When confronted repeatedly as to why he did not object, Massey responded: "Well, the objection wasn't made ...."

On cross-examination, Massey stated that the trial court had instructed the jury that what was said in closing statements was argument, but not evidence. Massey declared that he put on a good

case.  He met with Taylor several times and went to the scene to investigate the facts.  He discussed the case and the difficulties in terms of the defendant's version versus the officers' version.  On redirect Massey conceded that the state's closing argument should have been limited to the facts and any inferences from the facts in evidence.  He again admitted that he did not object to the state's comment that the officer was an expert and that Ms. Bird was a liar.  He said that he did not think that the state proved its case beyond a reasonable doubt, and he was surprised when the jury convicted the defendant.  On recross-examination, Massey reiterated that the court instructed the jury that closing statements were only argument and not facts in evidence.

The trial court stated that the ineffectiveness of counsel claim came down to whether a different result would have ensued but for the errors.  Taylor's counsel then argued that the result in this case was that the errors were not preserved for appellate review.  On 8 September 2003, the trial court granted the application for post conviction relief.

The state argues that Taylor is not entitled to relief on his ineffective assistance of counsel claim because the factors under Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052 (1984), were not met.  The state claims that the prosecutor's comments during closing argument were arguments of his own opinion and they did not contribute to or influence the outcome of the case.

La. C.C.P. art. 774 states that the scope of closing argument

> shall be confined to evidence admitted, to the lack of evidence, to conclusions of fact that the state or defendant may draw therefrom, and to the law applicable to the case.  The argument shall not appeal to prejudice.  The state's rebuttal shall be confined to answering the argument of the defendant.

However, prosecutors have wide latitude in choosing closing argument tactics.  State v. Lee, 2002-1793, p. 39 (La. App. 4 Cir. 4/2/03), 844 So.2d 970, 994, writ denied, 2003-1247 (La. 10/10/03), 855 So.2d 330; State v. Casey, 99-0023, p. 17 (La. 1/26/00), 775 So.2d 1022, 1036, citing State v. Martin, 539 So.2d 1235, 1240 (La. 1989).

The standard to evaluate an ineffective assistance of counsel claim has been discussed as follows:

The defendant's claim of ineffective assistance of counsel is to be assessed by the two-part test announced in <u>Strickland v. Washington</u>, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).   See <u>State v. Fuller</u>, 454 So.2d 119 (La. 1984).   The defendant must show that his counsel's performance was deficient and that this deficiency prejudiced him. The defendant must make both showings to prove counsel was so ineffective as to require reversal. <u>State v. Sparrow</u>, 612 So.2d 191, 199 (La. App. 4 Cir. 1992).   Counsel's performance is not ineffective unless it can be shown that he or she made errors so serious that he or she was not functioning as the "counsel" guaranteed to the defendant by the 6th Amendment of the federal constitution.  <u>Strickland</u>, supra, at 686, 104 S.Ct. at 2064.  That is, counsel's deficient performance will only be considered to have prejudiced the defendant if the defendant shows that the errors were so serious that he was deprived of a fair trial.   To carry his burden, the defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."  <u>Id</u>. at 693, 104 S.Ct. at 2068.

<u>State v. Crawford</u>, 2002-2048, p. 26 (La. App. 4 Cir. 2/12/03), 848 So.2d 615, 631-32, quoting <u>State v. Mims</u>, 97-1500 pp. 44-45 (La. App. 4 Cir. 6/21/00), 769 So.2d 44, 72.

The state has not provided the trial transcript or the excerpt of the prosecutor's remarks during closing arguments, which were the basis for the trial court's decision to grant the defendant a new trial. In its application the state declares:

The two comments made by the prosecutor during his closing argument that the defense is claiming should have been objected to by competent defense counsel were:  (1) The state referred to its star witness as an expert witness.  The defense claims that he had not been qualified as an "expert witness;" (2) The state

> then referred to the defense's most valuable witness
> as a "proven liar."

Actually, Taylor's application for post-conviction relief alleged three claims:  (1) ineffective assistance of appeal counsel for failure to raise the issue of the prosecutor's comment during closing argument that the sole defense witness/codefendant was a liar; (2) ineffective assistance of trial counsel for failure to object to several references by the prosecutor during closing argument regarding matters not included in or inferred by the evidence presented (referring to Officer Polk as an expert, referring to codefendant as a liar, stating or inferring that the defendant was seen running from the back of the house); and (3) the conviction was obtained in violation of the due process clause of the U.S. and Louisiana constitutions.[FN4]

> [FN4]  The first and second claims are discussed, but
> the third claim does not require discussion.

> First, Taylor alleged that the prosecutor had made direct remarks during closing argument that the sole defense witness had a propensity for lying, was giving false testimony, and vouched for the credibility of the state's witnesses; trial counsel objected, but appellate counsel failed to raise the issue on appeal.  The defense correctly noted that counsel for the codefendant, Ms. Bird, contemporaneously objected and preserved that issue for the codefendant's appeal.  However, trial counsel for defendant did not object; therefore, the issue was not preserved for the Taylor's appeal. Watters testified at the evidentiary hearing that she could not raise the issue on appeal because trial counsel had not objected even though the codefendant's counsel had raised an objection at the trial.  Clearly the defendant has not shown ineffective assistance of appeal counsel.

> In the second claim, Taylor alleged that trial counsel failed to object to the prosecutor's remarks during closing argument about matters not included in or supported by the evidence.  The first comment related to Officer Polk as an expert even though he had not been so qualified.  The following remark was quoted:

> > The first witness I want to talk about is Officer Polk,
> > an expert; expert undercover police officer on
> > buy/bust operations.  He's working in an area that he
> > knows, that is notorious for drug sales.  As he told
> > you, he's made many, many arrest [sic] in this area.

He's done this many, many times; a trained
individual.   His testimony kind of sets [ ] up
everything that happened.

At the evidentiary hearing, trial counsel, Massey, testified that
the prosecutor's comment was not important in terms of the case.
There was no reason to object.  The defense was mistaken identity,
and the comment did not really impact the case.  We find that the
failure to object to that remark would not constitute ineffective
assistance of counsel under <u>Strickland</u>.  There was no reasonable
probability that the outcome would have been different but for that
error.

The second and more problematic comment referenced was:

Now there is more than one take-down team in an
operation like this.  Detective Gouch, who is also on
this corner, sees him go into the house.  Take-down
teams move in, but they don't get him in the house.
Why?  Because police are moving in, and he knows
that.  The defendant knows that.  When the police
move in, he knows to run, boom, out of the back of
the house.

Taylor's trial counsel stated that the single remark did not
appear to be important; however, the entire case rested upon whether
Taylor was ever actually in the house at all.  Officer Gouch saw
Taylor enter the house, but the officers did not find him in the house
when they entered.  Taylor argued that because that was the thrust of
his defense, the prosecutor's statement that he ran out the back of the
house was extremely prejudicial.  Massey testified at the hearing that
the defense's theory was mistaken identity, and no officer testified
that the defendant was seen exiting the house.  He clearly indicated
that his focus with the jury had been to show that no officer saw
Taylor exit the house, and the officers did not find him inside.  The
fact that the defendant was not seen running from the house appears
to have been important to his mistaken identity argument.  When
questioned as to why he did not think an objection was needed,
Massey had no real answer.

In light of the fact that there was no physical evidence against
the defendant, that he was not found in the house, that he was not in
possession of the marked money given to the seller by the undercover
officer, and that his defense was mistaken identity, one might think

that the prosecutor's comment could have influenced the jury to believe that the state had provided testimony or evidence proving that the defendant was seen running from the house. The trial judge apparently concluded that this remark or combination of this remark and the two other prosecutorial comments might have affected the outcome of the case. However, in our appellate opinion we discussed the evidence as follows:

> The testimony of Detectives Polk and Gouch established that Janie Bird took money from Detective Polk to purchase cocaine, and she gave that money to Jessie Taylor in return for the drug. Both detectives witnessed the transaction, and Janie Bird gave the cocaine to Detective Polk. Taylor was seen entering a house and shortly thereafter running down a nearby street. In his brief he maintains that because he was not seen leaving the house, the police were wrong in identifying him as the drug vendor. However, both detectives testified that they got a good look at him during the drug transaction, and then Detective Gouch saw him running from the area five minutes after the sale.
>
> The jury heard the testimony of the detectives and that of Janie Bird, believed the detectives and not Janie Bird. A factfinder's credibility decision should not be disturbed unless it is clearly contrary to the evidence.

State v. Taylor, 2001-1284, unpub., at p. 5.

Officer Polk identified Taylor as the man from whom Ms. Bird purchased the cocaine for him. Detective Gouch also identified the defendant as the seller. In light of the officers' testimony that they got a good look at the defendant during the drug transaction and clearly identified him as the seller, the defendant has not shown that there is a reasonable probability that but for his trial counsel's error in not objecting to the prosecutor's comments during closing arguments, the outcome of his trial would have been different.

The third comment involved the prosecutor calling the defense witness, codefendant, Ms. Bird, a liar. The comment quoted was: "We heard from Janie Bird. We heard not only that she has convictions, but that she had a propensity to lie and make up stories." Taylor argued that the fact that the codefendant had prior convictions

did not render her untruthful.   In the discussion of the first assignment of error, the following comment was also quoted:  "The first option is she could be mistaken, but the second option probably more likely, the option is she's lying.  Why is she lying?  Well, I mean, basically the stories are inconsistent.  Either the police are lying or she's lying.  I'm going to tell you she's lying."  At the evidentiary hearing trial counsel discounted the significance of those remarks because they were just the prosecutor's argument.  Clearly the jury had to believe the police officers, who identified the defendant, or the codefendant, who did not.  One could not conclude that but for that comment, even if improper, the outcome of the trial would have been different.  Taylor did not carry his burden to prove that the failure to object to that remark constituted ineffective assistance of counsel.

We conclude, therefore, that the trial court erred by granting the defendant's application for post conviction relief and a new trial.  We grant the state's writ application and reverse the trial court's decision to grant the application for post-conviction relief and to grant Taylor a new trial.[12]

In the memorandum in support of his federal application, petitioner makes clear that in this proceeding he is reurging his claims that his trial counsel was ineffective in failing to object during the prosecutor's closing arguments in three instances, i.e. when the prosecutor (1) indicated that officers witnessed petitioner exiting the house, (2) stated that Bird had "a propensity to lie," and (3) referred to Polk as "an expert."

It is clear that "[a] decision not to object to a closing argument is a matter of trial strategy."  Drew v. Collins, 964 F.2d 411, 423 (5th Cir. 1992); see also Spicer v. Cain, Civ. Action No. 07-3770, 2007 WL 4532221, at *10 (E.D. La. Dec. 19, 2007).  The United States Supreme Court has held that federal *habeas* courts are not to second-guess counsel's strategic decisions through the distorting lens of hindsight but instead are to employ a strong presumption that the conduct falls

_____

[12]  Taylor, No. 2003-K-2042, at pp. 4-13; State Rec., Vol. I of II.

within a wide range of reasonable assistance.  Strickland, 466 U.S. at 689;  see also Burnett v. Collins, 982 F.2d 922, 930 (5th Cir. 1993); Rios-Delgado v. United States, 117 F.Supp.2d 581, 589 (W.D. Tex. 2000) ("Generally speaking, a failure to object, standing alone, does not rise to the level of constitutionally deficient performance.  In cases where an accused complains that counsel was ineffective because he did not object to something ..., the courts grant significant deference, as such actions fall squarely within the ambit of trial strategy.").  Such deference to counsel's strategic choices is particularly appropriate here in light of the following inherent weaknesses proposed the objections.

As to the first proposed objection, petitioner states that the prosecutor erroneously stated that officers witnessed petitioner exiting the house, pointing to that portion of the closing argument quoted above from the state court opinion.  However, the prosecutor did not state that officers *actually saw* petitioner run out of the back of the house.  Rather, it is evident that the prosecutor merely surmised that petitioner ran out of the back of the house based on the evidence showing that (1) Detective Gouch saw petitioner enter the front of the house, (2) Gouch shortly thereafter again saw petitioner, this time running in a nearby location, and (3) officers did  not find petitioner in the house.  Clearly, if petitioner was seen *entering* the house and was then shortly thereafter apprehended *outside* of the house, then he *must* have *exited* house whether or not officers observed him doing so.  It is not improper for a prosecutor to draw such an inference which is based on the evidence at trial and in no way suggests knowledge of facts outside the record.  See, e.g., United States v. Thompson, 482 F.3d 781, 785-86 (5th Cir. 2007); United States v. Enriquez, No. 02-50265, 2003 WL 342291, at *1 (5th Cir. Jan. 29, 2003); Dowthitt v. Johnson, 230 F.3d 733, 755 (5th

Cir. 2000); United States v. Shaw, 701 F.2d 367, 389 (5ᵗʰ Cir. 1983) ("It is well-settled that the prosecution has the right to urge a conclusion based on the evidence."); United States v. Allen, 588 F.2d 1100, 1108 (5ᵗʰ Cir. 1979) ("[A]n attorney is entitled to urge the conclusions which the attorney thinks the jury should draw from the evidence.").

As to the second proposed objection, petitioner states that the prosecutor erroneously stated that Bird "had a propensity to lie and make up stories."  However, again, the prosecutor made clear that his conclusion concerning Bird's veracity was based on inconsistencies in the record, not personal knowledge of facts outside of the record.  As noted in the state court's opinion, the prosecutor stated:

> The first option is she could be mistaken, but the second option probably more likely, the option is she's lying.  Why is she lying? Well, I mean, basically the stories are inconsistent.  Either the police are lying or she's lying.  I'm going to tell you she's lying.[13]

---

[13]  State Rec., Vol. II of II, trial transcript, pp. 105-06.

Similar comments have been found permissible.  See, e.g., United States v. Washington, 44 F.3d 1271, 1279 (5th Cir. 1995);[14] Younger v. Cockrell, No. 3:00-CV-2239, 2001 WL 1543842, at *16-17 (N.D. Tex. Nov. 30, 2001); Andrews v. Cain, 71 F.Supp.2d 560, 564 (E.D. La. 1999).

        As to the final proposed objection, petitioner states that the prosecutor improperly referred to Polk as "an expert," referring to the portion of the closing argument quoted above from the state court's opinion.  This Court is of the impression that petitioner reads too much into that statement.  When the comment is considered in context, it is evident that the prosecutor was not referring to Officer Polk as an "expert witness" in the legal or technical sense; rather, the fairer interpretation is that the prosecutor meant that the testimony showed that Polk is a professional with considerable experience in such narcotics operations.  While that point could have been phrased better, and while an objection could have prompted an admonishment to jury  so as to avoid any possible misunderstanding, the Court views the comment as one of little consequence.  Again, it must be remembered there was essentially no dispute that the drug sale occurred or that the

_____

[14]  In rejecting a similar claim in Washington, the Fifth Circuit held:

        We also find meritless James' argument the prosecution improperly offered its personal view of the credibility of defense witnesses in two other instances when the prosecution ventured the opinions that one defense witness was "lying," and that another defense witness "was not being truthful."  Taken in context, these two statements are merely further examples of the prosecution's reciting evidence in the record – this time, conflicting evidence – and then attempting to persuade the jury to arrive at a certain conclusion based on that evidence.  There is nothing impermissible about a prosecutor's pointing out inconsistent facts or testimony in the record and arguing that the jury should adopt a particular conclusion based on that evidence.  Given the evidence before the jury, therefore, we find nothing inappropriate about the prosecution's comments in closing argument.

Washington, 44 F.3d at 1279 (footnote omitted).

– 19 –

operation was conducted properly; rather, petitioner's defense was *misidentification*, a defense which was in no way affected by whether or not the jurors viewed Polk as an expert.

For the foregoing reasons, the Court finds that the proposed objections would have had little merit and been of negligible value to the defense.  Nevertheless, even if one or more of the objections might have had a chance of succeeding, defense counsel was still allowed to make a strategic choice to forego such objections to avoid antagonizing the jury.  See Wiley v. Puckett, 969 F.2d 86, 102 (5th Cir. 1992); see also Spicer v. Cain, Civ. Action No. 07-3770, 2007 WL 4532221, at *10 (E.D. La. Dec, 19, 2007).  Further, the proposed objections would have invited the jurors to focus their attention on the prosecutor's closing argument, which jurors may not consider as evidence in any event, and perhaps thereby inflated its importance in the jurors' minds.  Counsel can hardly be deemed to have performed ineffectively in choosing to avoid that unnecessary risk.

Finally, even if counsel's choices regarding the objections *could* be considered deficient performance, petitioner clearly has not shown prejudice.  Petitioner was positively identified by *two* officers as the perpetrators of this crime, and the jury obviously found their testimony credible.  In light of those credible eyewitness identifications, petitioner simply has not shown that there is a reasonable probability that the result of the proceeding would have been different if only counsel had made the proposed objections to the prosecutor's closing argument.

Petitioner has not demonstrated that the state court's decision rejecting his ineffective assistance of counsel claims was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States.  Accordingly, in light of the AEDPA's deferential standard, this Court likewise rejects those claims.

– 20 –

## <u>RECOMMENDATION</u>

Accordingly, **IT IS RECOMMENDED** that the petition for federal *habeas corpus*

relief filed by Jessie Taylor be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and

recommendation contained in a magistrate judge's report and recommendation within 10 days after

being served with a copy shall bar that party, except upon grounds of plain error, from attacking on

appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district

court, provided that the party has been served with notice that such consequences will result from

a failure to object. <u>Douglass v. United Services Auto. Ass'n</u>, 79 F.3d 1415, 1430 (5th Cir. 1996) (en

banc).

New Orleans, Louisiana, this <u>  31st  </u> day of October, 2008.


_____
**LOUIS MOORE, JR.**
**UNITED STATES MAGISTRATE JUDGE**